UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Case No.

DEBORAH JETTER, DENNIS HOWELL,
CECIL HOWELL, BARBARA APPLEBURY,
ALLEN AND ALBERTA HARRIS,
VICKIE JACKSON, JERILYN ISABEL

on behalf of themselves
and all others similarly situated,

COMPLAINT

v.

CITY OF CINCINNATI

Defendant

PRELIMINARY STATEMENT

1. This is an action brought under the Fair Housing Act, 42 U.S.C. § 3601 et seq. Plaintiffs allege that the City of Cincinnati is intentionally operating a racially discriminatory Residential Tax Abatement Program that benefits Caucasian homeowners in a greatly disproportionate degree than African American homeowners, and that the operation of the Program is exacerbating the racially segregated residency pattern in Cincinnati.

JURISDICTION AND VENUE

1

2. This Court has jurisdiction pursuant to 28 U.S.C. §1331 based on Plaintiffs' Fair Housing Act claims. The actions complained of occurred in the District and venue is proper under 28 U.S.C. 1391.

## PARTIES

### Representative Plaintiffs

3. Plaintiff Deborah Jetter resides on Glenwood Ave. in the majority African American neighborhood of Avondale. She is African American. Ms. Jetter was a staff member of Housing Made Equal (HOME) for 40 years. HOME is dedicated to eliminating illegal discrimination and promoting balanced living patterns. Ms. Jetter has owned her home on Glenwood since June of 1983. Ms. Jetter and her neighbors seek to protect and enhance the property values and livability of Avondale, and the personal wealth of its homeowners. Ms. Jetter and her neighbors have been deprived of a proportionate share of city services—such as street cleaning and sewer maintenance, as well as tax abatements for new construction and renovations. As a result, Avondale, as a neighborhood, has stagnated, in comparison to Caucasian neighborhoods such as Hyde Park.

4. Plaintiffs Dennis and Cecil Howell own a single family residence at 1918 Dalewood Pl. in Bond Hill that they are renting out. They have owned this house since 1973. Renting property has afforded the Howells with social mobility which is enhanced by increasing property values in the neighborhood. Renovation of existing residences and new construction in Bond Hill would create a more vibrant neighborhood and enhance the wealth of the homeowners in that neighborhood. In

2

addition, the Howell Plaintiffs strongly favor living in a less segregated city which they believe promotes American values.

5. Plaintiffs Allen and Alberta Harris own their home at 1826 Berkeley Ave. Bond Hill. They have lived in their home for 33 years. The Harris' are African Americans. The Harris have fought against the incursion of drugs in their neighborhood and have endeavored to improve Bond Hill as a neighborhood by increasing the value of the residences which a greater share of residential tax abatements would bring. In addition, the Harris' favor living in a less segregated city which they believe promotes American values.

6. Plaintiff Vickie Jackson, African American, has lived at 1929 Dale Rd. Bond Hill for the past 52 years. She lives with her 95 year old mother. Plaintiff Jackson has observed the slow decline of the Bond Hill neighborhood over the years and how it has become increasingly more racially segregated. There are many elderly African American homeowners with limited incomes who are unable to afford substantial renovations. Ms. Jackson has observed that property values have declined in Bond Hill over the years. The City of Cincinnati does not have any low interest loan programs for declining neighborhoods like Bond Hill, nor has the City otherwise invested in Bond Hill. Ms. Jackson is committed to working to lessen the racial segregation in Bond Hill and improve the wealth of property owners that would come with increased property values. The $5,000 limit of eligibility for tax abatements has had a disqualifying effect on lower costs renovations in Bond Hill.

7. Plaintiff Jerilyn Isabel, an African American lives with her husband at 1819 Berkley Ave. Bond Hill. They have owned the house since 2002. Ms. Isabel has witnessed the decline of Bond Hill in the recent years with numbers of home falling into disrepair and needing renovation. She has also witnessed an alarming increase in drugs and violent crime in the neighborhood. This has been accompanied by "vulture" homebuyers urging her and her neighbors to sell their houses. Since there is a minimum of $5,000 of housing renovation in order to be eligible for a tax abatement, many homeowners in Bond Hill are discouraged from doing more modest renovations or renovations stretched out over more than one or two years.

8. Plaintiff Barbara Applebury and her husband live at 1715 Lang St. in Over-the-Rhine. They have owned their 4 story home at this address since 1993. The house is fully paid for. The Appleburys are elderly and live on a fixed income. They are African American and have benefitted by the significant recent renovations and new constructions and new entrants in their immediate neighborhood that has been promoted by tax abatements. However, with this neighborhood enhancement, increased property taxes will accompany the increased property values which will jeopardize the ability of the Appleburys to remain in the neighborhood. The City of Cincinnati's Tax Abatement program does not include any feature to protect existing property owners from being forced out by higher property taxes fueled by tax abatement development.

4

## Class Action Allegations

9. Plaintiffs bring this action pursuant to Fed. R. Civ. Proc. 23 (b) (2) on behalf of themselves and a class similarly situated.

10. The class Plaintiffs seek to represent are all African-American homeowners and renters in the predominately African-American neighborhoods of Cincinnati, including — Avondale, Bond Hill, College Hill, English Woods, Evanston, Kennedy Heights, Madisonville, Millvale, Mount Airy, Mount Auburn, North Avondale, North Fairmont, Paddock Hills, Pendelton, Roselawn, South Cumminsville, Walnut Hills, Winton Hills, and The West End who seek to accumulate the wealth that corresponds to rising neighborhood housing values, and who seek to obtain the housing mobility that corresponds to wealth accumulation and who are presently precluded from living in a number of Cincinnati neighborhoods where property values are ever getting out of reach for persons of their present income and wealth.

11. The class consists in the tens of thousands and is no numerous that joinder of all members is impractical.

12. There are questions of law and fact common to the class, most prominently whether that Tax Abatement Program of the City of Cincinnati has deprived African-American homeowners of wealth accumulation opportunities in terms of increasing their property values in their neighborhoods in a racially discriminatory manner, and

whether the Tax Abatement program has exacerbated the racially segregated residency pattern in Cincinnati where neighborhood economic barriers are thinly masked racial barriers.

13. The claims of the representative Plaintiffs are typical of the class claims.

14. The representative Plaintiffs will fairly and adequately protect the interests of the class.

15. The Defendant City of Cincinnati has acted on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole.

## The operation of the Tax Abatement Program

16. The City of Cincinnati has adopted a Residential Tax Abatement program under the authority granted by Ohio Revised Code 3735.65 et seq. The Cincinnati Tax Abatement program is administered by the Department of Community and Economic Development of the City of Cincinnati.

17. The City of Cincinnati's Residential Property Tax Abatement program allows property owners, by application, to pay property taxes on the pre-improvement value of their property for 10-15 years, subject to certain maximums of abated taxes.

18. A property tax abatement is available for any increased valuation that results from improvements to the property for new construction and renovation.

For example, where a family buys a vacant lot for $100,000.00 and builds a $400,000.00 house that is built according to the highest level of "green" standards (LEED Platinum Standards), the family will only be taxed on the $100,000.00 original valuation for 15 years, and the remaining $400,000.00 would be abated for those years, resulting in a tax saving of about $8,000.00 per year.

19.     Likewise, for a renovation of a house that was assessed at $250,000.00 where the cost of renovation was $150,000.00. The entire amount of the renovation cost would be tax abated for 10 years with a tax savings of $3,000.00 a year or a total for the 10 years of $3,000.00.

20.     There is a $5,000.00 minimum in renovation costs to be eligible for a tax abatement. Thus, lower income homeowners making modest renovations of less than $5,000.00 or a series of renovations, each of which are less than $5,000.00 are not eligible for a tax abatement. This eligibility minimum plus the fact that the City of Cincinnati does not have a grant or loan program for housing renovation has significantly limited the ability of African Americans from participating in the Tax Abatement Program.

21.     Developers or homeowners seeking a tax abatement for a renovation or new construction initially apply to the Department of Community and Economic Development of the City of Cincinnati. The application requires information about the levels of LEED (Leadership in Energy and Environmental Design) the will be incorporated into the renovation or new construction, building permits, the costs of the renovation or new construction and supporting documents, and other related

7

documents. Subsequently, the Hamilton County Auditor determines the amount of the abatement based on the type of improvements as well as when the abatement period begins.

22. Nowhere in the application or approval process is there any consideration by the City of Cincinnati of the degree to which the granting of tax abatements will have a racially segregative effect on the residency pattern in the City of Cincinnati.

23. The most recent recorded figures available from the City of Cincinnati indicate that to date there have been granted 2640 residential tax abatements with a total of $183,498,051 in total taxes abated. https://insights.cincinnati-oh.gov/stories/s/Residential-Tax-Abatements/kceu-xqtz/

24. There are no distribution limitations for tax abatements per neighborhoods. Thus, there have been $53,144,796.00 tax abatements for Hyde Park, a Caucasian neighborhood or 29% of the total city-wide of tax abatements. When the adjoining Caucasian neighborhoods of Mount Lookout, Oakley and Columbia-Tusculum, plus the predominately Caucasian neighborhoods of East End, Downtown, Linwood and Saylor Park are added — these neighborhoods represent 50.1% of all taxes abated city wide.

25. By contrast, the predominately African-American neighborhoods of Walnut Hills, Mt. Auburn, West End, Pendelton, Bond Hill, College Hill, Madisonville, Evanston and Avondale –combined– amount to only 17% of the total of tax abatement dollars.

8

26. Other predominately African American neighborhoods have only benefitted by nominal amounts of tax abatements. The neighborhoods of Westwood, North Avondale, South Cumminsville, Kennedy Heights, English Woods, and Roselawn account for a total of $621,000 in tax abatements or 3.4% of the total abatements citywide.

### The Racial Impact of the Cincinnati Tax Abatement Program

27. The tax abatement program of the City of Cincinnati has resulted in significant new construction of single- family homes, and condominiums in Caucasian neighborhoods in Cincinnati, thereby increasing property values and personal wealth of Caucasian homeowners.

28. The tax abatement program has also had the result of increasing the Caucasian population in these neighborhoods as new construction and home renovations have become more affordable with tax abatements.

29. Increasing the Caucasian population in predominately Caucasian neighborhoods has increased the degree of racial segregation in residency in Cincinnati.

30. As a result of the increase in property values in Caucasian neighborhoods, entry into those neighborhoods has been made less affordable to African Americans with proportionately lesser incomes – again rigidifying the degree of racial segregation in residency in Cincinnati.

31. By contrast, there has been minimal tax abatement activity in African American neighborhoods where property values have remained relatively flat, and there has been no consequent addition to the personal wealth of African-Americans living in African American neighborhoods. Thus, the stagnant development in most African American neighborhoods has contributed to the racially segregated character of those neighborhoods.

32. The result for neighborhoods in Cincinnati is that Caucasian neighborhoods have become more affluent, more exclusive, and more White. African American neighborhoods remain Black, and less affluent. Tax abatements have contributed substantially to this phenomenon.

33. The policymakers of the City of Cincinnati—City Council, the Mayor of Cincinnati and the administrators of the Community Development Department have been fully informed of the racially segregative impact of the tax abatement program as indicated by the materials on the Community Development Department's website, and have approved and ratified the results of the program.

34. The City of Cincinnati policymakers have informed themselves about the negative trends of residential segregation in "Fair Housing Assessment for Cincinnati and Hamilton County" August 2019, prepared by the Community Building Institute for the City of Cincinnati and Hamilton County. That report found that "… The Cincinnati region has been identified over the years as a metropolitan area that is among the most segregated in the Country…..After decades of the dissimilarity index moving in a

positive direction between 1990 and 2010 (meaning a decrease in dissimilarity), index scores in Cincinnati, Hamilton County and Greater Cincinnati got worse between 2010 and 2017..." id at 40.

35. Housing Professionals were surveyed by the Community Building Institute as a part of its report and "Overall the majority of respondents (55%) reported that they see housing discrimination in the region..." "Near East Side region and near West Side regions were areas where the highest number of respondents recognized discrimination..." id p. 24.

## Fair Housing Act Violation

36. The Tax Abatement Program operated by the City of Cincinnati is in violation of the Fair Housing Act, 42 U.S.C. 3601 *et seq*. in that it has been intentionally operated by the policymakers of the City of Cincinnati in a racially discriminatory manner conferring tax abatements to benefit Caucasian neighborhoods in a greatly disproportionate degree than tax abatements have benefitted African-American neighborhoods.

37. As a result of this discriminatory impact in the extension of tax abatements, property values in Caucasian neighborhoods has increased, and the wealth of the Caucasian homeowners has increased, and by contrast the property values in African American neighborhoods have been stagnant and the wealth of African- American

resident has not increased in any significant proportion to that of homeowners in the Caucasian neighborhoods.

38. As a consequence of the enrichment of the value of Caucasian neighborhoods, the racially segregated residency pattern of Cincinnati has been exacerbated. African Americans who have experienced a widening gap in property values from Caucasians have a reduced social mobility in making residency choices. Moving from African American neighborhoods to Caucasian neighborhoods has become a lesser opportunity.

39. The racial consequences of the Cincinnati Tax Abatement program are known by the policymakers of the Defendant and are intended.

## DEMAND FOR RELIEF

Wherefore, Plaintiffs demand judgment as follows:

a. That the City of Cincinnati be enjoined from extending or allowing further tax abatements to the Caucasian neighborhoods identified in paragraph 24 above until the African American neighborhoods as identified in paragraph 25 and 26 above have achieved parity in the dollar value of abatements that has to the date of judgment been granted in the Caucasian neighborhoods.

b. In the alternative to (a) above that this Court order the City of Cincinnati to grant tax abatements of 100% of property taxes owed to the City to all existing African American homeowners for a period of 10 years, and to all new African American

12

homeowners who purchase homes in the next 10 years, such tax abatement of 100% to continue for 10 years following purchase.

c. That the City of Cincinnati establish an outreach program to African American neighborhoods to facilitate developers and homeowners in obtaining residential tax abatements.

d. That to the extent that tax abatements cause an increase in property taxes in African-American neighborhoods, that non-renovating neighbors in those neighborhoods will be accorded a tax abatement to offset such increases.

e. That attorneys fees be awarded to Plaintiffs' counsel.

f. For such other and further relief as is just and necessary.

Respectfully submitted,

Robert B. Newman (0023484)
215 E. 9th St. Ste. 650
Cincinnati, OH 45202
513-639-7000
Bob@robertnewmanattorney.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Deborah Jetter

## DEFENDANTS
City of Cincinnati

**(b)** County of Residence of First Listed Plaintiff: Hamilton
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Hamilton
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Robert B. Newman, 215 E. 9th St. Ste. 650 Cincinnati, OH
513-639-7000

Attorneys *(If Known)*
Paula Boggs Meuthing City Hall, 801 Plum St. Cincinnati OH
513-352-3320

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | |
| | | | | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 3601
Brief description of cause:
race discrimination in the operation of the tax abatement program

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ 0.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 07/29/2020
SIGNATURE OF ATTORNEY OF RECORD: Robert B. Newman

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____