## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DENNIS HOWELL, *et al.*, | : | Case No. 1:20-cv-00581 |
| Plaintiffs, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CITY OF CINCINNATI, | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING MOTION FOR RECONSIDERATION

This civil case is before the Court on the City of Cincinnati's ("the City's") motion for reconsideration of the Court's July 6, 2022 Notation Order. (Doc. 32).

### I. BACKGROUND

This case involves the City's Residential Tax Abatement ("RTA") program. The RTA program permits homeowners who invest in home renovations to pay taxes based on their homes' pre-renovation value for up to 15 years. Only homeowners in designated community reinvestment areas ("CRA") are eligible for the RTA program. Since 2001, the City has designated *all* of Cincinnati as a CRA, meaning residents in the City's poorest neighborhoods, and its richest, are eligible for the program. Plaintiffs allege the City's operation of the RTA program has deepened racial segregation and disadvantaged Black communities in violation of the Federal Fair Housing Act, 42. U.S.C. § 3601 *et seq*.

The City is not oblivious to these effects. Independent of this lawsuit, the City hired a vendor to study the effects of the RTA program and suggest changes. The vendor

completed its report last month. That report confirmed that the current RTA program disproportionately benefits neighborhoods with a higher proportion of white residents.[1] Predominantly white neighborhoods receive more than seven times the tax benefit of non-white neighborhoods.[2] And, like Plaintiffs, the report calls for modifications to the RTA program to make it "more equitable."[3]

Pursuant to its inherent authority to "achieve the orderly and expeditious disposition of cases," the Court ordered the parties to engage in settlement discussions. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). All parties agree that modifying the existing RTA program would require City Council to pass [a] new ordinance(s). The parties further agree that the *right* new City ordinance would obviate the need for this lawsuit. Thus, passage of a City ordinance modifying the RTA program has become a core component of settlement discussions between the parties.

At no point has the Court sought to control non-parties who are beyond the Court's jurisdiction. Indeed, at the July 5, 2022 status conference, the City reported that Councilmember Jeff Cramerding declined to attend a meeting with Plaintiffs' counsel. The Court properly left it at that.

Following the July 5th status conference, the Court entered a Minute Entry and Notation Order requiring City Manager John Curp, as an agent of Defendant City of

---

[1] HR&A Advisors, Inc., *City of Cincinnati, Residential Tax Abatement Program: Evaluating Options for a Tiered Program, Final Report* 44 (2022).

[2] *Id.* at p. 46.

[3] *Id.* at p. 56.

Cincinnati, to "submit to the Court, by 7/19/2022 via ex parte email to Chambers, ... a *proposed nonbinding* calendar with specific milestones *that would* accomplish presentation of a draft ordinance to the City Council for a vote in September 2022." (emphasis supplied).

On July 19, 2022, Mr. Curp largely complied with the Notation Order by emailing a letter to the Court (and, contrary to the Court's Order, Plaintiffs' council).[4] Instead of "specific milestones that would accomplish presentation of a draft ordinance to the City Council for a vote in September 2022," Mr. Curp provided a calendar of dates that members of City Council and its advisors might discuss the RTA program, and a general description of the legislative process for City ordinances.[5] Mr. Curp called it "highly unlikely, if not impossible, that an ordinance regarding the RTA program will be before Council for vote in September of 2022."[6] To his credit, Mr. Curp did identify which general milestones a proposed ordinance would have to clear to be passed in September.[7] Though not in a "calendar" form, that is essentially all the Court required of him.

---

[4] Letter from John Curp, Interim City Manager, City of Cincinnati, to the Court (July 19, 2022) (on file with the Court).

[5] *Id.* at 1-2.

[6] *Id.* at 2.

[7] *Id.*

3

The day after Mr. Curp's letter, the City filed a 15-page motion asking the Court to "reconsider" the Notation Order with which Mr. Curp had already mostly complied. (Doc. 32). For the reasons that follow, the motion to reconsider is **DENIED.**

## II. STANDARD OF REVIEW

Though the Federal Rules of Civil Procedure do not expressly recognize a Motion to Reconsider, "a district court has an inherent power to amend interlocutory orders." *Al–Sadoon v. FISA Madison Financial Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn.2002). Furthermore, Federal Rule of Civil Procedure 54(b) permits courts to revise any order before entry of final judgment. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.*

## III. ANALYSIS

### A. The Notation Order presents no clear error or manifest injustice

The City argues that the Court's July 5, 2022 Notation Order ("the Notation Order") presents a clear error of law and may cause manifest injustice to the City and its citizens. To make this argument, the City cites the separation of powers inherent in the City's Charter. *See* City of Cincinnati Charter, Art. IV, §§ 1, 3 (1999).

First, the City contends that ordering the City Manager to submit "a proposed nonbinding calendar with specific milestones that would accomplish presentation of a

4

draft ordinance to the City Council for a vote in September 2022" is an error of law. The City argues that its Charter provides City Council exclusive authority to set its own schedule (Doc. 32 at 6), while the City Manager oversees "implementation and enforcement of the City Council's policy and legislative initiatives" (*id.* at 3, 5). Thus, according to the City, the Court's Notation Order:

> demand[s] that the City Manager attempt to control a process that is exclusively controlled by City Council, [which] threatens to violate the separation of powers between the executive and legislative branches of the City's government under its charter.

That mischaracterizes Notation Order. The Court makes no attempt to control the City Council's calendar through Mr. Curp. Indeed, the Notation Order is worded precisely to avoid reaching into the legislative sphere. The Court specified that Mr. Curp's calendar was to be "proposed" and "nonbinding" because the Court *did not* intend to bind City Council to Mr. Curp's calendar. The Court merely desired (and mostly received) an understanding of which "specific milestones" would need to attain for a hypothetical draft ordinance to go to a vote during the Council's September session.

Second, the City asks the Court to reconsider its Notation Order because it threatens "manifest injustice." The City asserts that the Notation Order:

> inappropriately seeks to truncate the legislative process by imposing a timeline of less than 10 weeks, most of which Council is not in session, for the passage of new legislation on a matter of significant and broad concern among far more constituents of all ages, abilities, races, and incomes than are represented by Plaintiffs' counsel.

Again, the Notation Order attempts no such thing. It does not "impos[e]" any timeline.

5

It does not demand that City Counsel advance its session. And it certainly does not suggest that the City should exclude Cincinnatians from participation. At most, the Notation Order demanded a "propos[al]" for how an ordinance *might* be presented to the City Council in September. If that is impossible, so be it. The Notation Order only asks that the City demonstrate why.

The Court's interest is in ensuring the City is doing all it can (and nothing it cannot) to move in the direction of settlement. To that end, the Court has made itself exceptionally available to the parties. Future misunderstandings about the Court's intentions may be directed to Chambers' email (Black_Chambers@ohsd.uscourts.gov).

## IV. CONCLUSION

Based upon the foregoing, the City's motion for reconsideration (Doc. 32) is **DENIED**.

**IT IS SO ORDERED.**

Date:   7/25/2022                                              *s/Timothy S. Black*
                                                               Timothy S. Black
                                                               United States District Judge

6