# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| DENNIS HOWELL, *et al.*, | : | Case No. 1:20-cv-581 |
| Plaintiffs, | : | |
| | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| CITY OF CINCINNATI, | : | |
| | : | |
| Defendant. | : | |

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANT'S MOTION TO DISMISS

This civil case is before the Court on Plaintiffs' motion for preliminary injunction (Doc. 41) and the parties' responsive memoranda (Docs. 45, 47). Also before the Court is Defendant City of Cincinnati's motion to dismiss Plaintiffs' Amended Complaint (Doc. 29) and the parties' responsive memoranda (Docs. 30, 31).

## I. BACKGROUND

This case involves the City's operation of a Residential Tax Abatement ("RTA") program. Generally put, the RTA program permits homeowners who invest in home renovations to pay taxes based on their homes' pre-renovation value for up to 15 years. Only homeowners in designated community reinvestment areas ("CRA") are eligible for the RTA program. Since 2001, the City has designated <u>all</u> of Cincinnati as a CRA, meaning residents in the City's poorest neighborhoods, and its richest neighborhoods, are eligible to participate in the program.

The named Plaintiffs in this case are African American homeowners who live in the neighborhoods of Bond Hill, Roselawn, Mt. Airy, College Hill, Paddock Hills, North Avondale, Kennedy Heights, Evanston, Avondale, Over-the-Rhine, Walnut Hills, and Madisonville. According to Plaintiffs, the City's operation of the RTA program violates the Federal Fair Housing Act, 42. U.S.C. § 3601 *et seq*. ("FHA"), because the City's operation of the RTA program disadvantages African American communities, deepening racial segregation in the City.

On March 27, 2023, Plaintiffs filed a motion for preliminary injunction. (Doc. 41). Specifically, Plaintiffs request that the Court:

> enjoin the [City] from allowing or authorizing further residential tax abatements to or on behalf of homeowners or condo owners in the Eastern Caucasian neighborhoods of Hyde Park, Oakley, East End, Riverside, Columbia Tusculum, Mr. Lookout, Linwood, California, and Mt. Adams unless and until the Defendant presents to the Court a plan and a program for residential tax abatements that fully comply with the Fair Housing Act, 42 U.S.C. 3601, such plan providing for the progressive diminishment of the racially segregated residency pattern in the City of Cincinnati.

(Doc. 41 at 1).

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 empowers district courts to issue preliminary injunctions "to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). Courts consider four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the

injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (per curiam) (en banc). In the Sixth Circuit, "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020).

## II. LAW & ANALYSIS

### A. Irreparable Harm

The Court starts with irreparable harm because "even the strongest showing on the other three factors cannot eliminate the irreparable harm requirement." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326-27 (6th Cir. 2019). Irreparable harm "is indispensable: If the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief now as opposed to at the end of the lawsuit." *Id.* (citation omitted).

An irreparable harm "'must be both certain and immediate,' not 'speculative or theoretical.'" *Id.* (citing *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991)). Moreover, "an unexcused delay in seeking extraordinary injunctive relief may be grounds for denial because such delay implies a lack of urgency and irreparable harm." *Ohio v. Becerra*, 577 F. Supp. 3d 678, 699 (S.D. Ohio 2021) (quotation omitted).

Plaintiffs first contend that they need not show irreparable harm because, in fair housing cases, irreparable harm is presumed. (Doc. 41 at 9-10; Doc. 47 at 9). Although some courts presume irreparable harm when a victim of housing discrimination

3

demonstrates a likelihood of success on the merits, the Sixth Circuit has not outwardly endorsed this view. *E.g.*, *U.S. v. Edward Rose & Sons*, 384 F.3d 258, 264 (6th Cir. 2004) (finding it unnecessary to endorse this position because other factors justified the preliminary injunction entered in this Fair Housing Act case, but noting that "[s]ome circuits have ruled that when a federal statute specifically provides for injunctive relief, … a showing of irreparable harm is not required"); *Lake-Geauga Recovery Centers, Inc. v. Munson Twp.*, No. 1:20-CV-02405, 2021 WL 1049661, at *11 (N.D. Ohio Mar. 19, 2021) (declining to presume irreparable harm). In this case, the Court will not presume irreparable harm.[1]

Plaintiffs then suggest that irreparable harm is present because there is an inherent harm when there is discrimination in housing and segregation. (Doc. 41 at 10; Doc. 47 at 9). There is no dispute that discrimination and segregation in housing is harmful. However, Plaintiffs have not shown that, absent at preliminary injunction, they face immediate, irreparable harm. Indeed, Plaintiffs have been challenging how the City operates the RTA program for years.

---

[1] Irreparable harm is often presumed in fair housing cases once likelihood of success is shown because the plaintiff(s) will face a change in housing. *E.g.*, *Cousins v. Bray*, 297 F. Supp. 2d 1027, 1041 (S.D. Ohio 2003) ("Though they are entitled to the benefit of the legal presumption of irreparable harm, Plaintiffs here have nonetheless made some showing of actual irreparable harm. The eviction from their home of a financially insecure family in the middle of winter could well constitute irreparable harm."). Stated differently, irreparable harm in such cases is obvious because, without an injunction, a plaintiff may be evicted or be unable to attain housing. There are no allegations in this case that any of the Plaintiffs will be immediately removed from housing or be unable to attain housing absent an injunction. So, the Court does not find this case, at this time, to be one where irreparable harm is presumed.

To be sure, Plaintiffs show some immediacy, for the first time on reply, when mentioning that the City "has recently put forward a format for purportedly accomplishing nearly all of its stated objects for operating an RTA program with a less discriminatory effect in the ordinance recently adopted to be effective, September 1, 2023." (Doc. 47 at 8). But, Plaintiffs seem to acknowledge that the "framework would allow the City to have a multi-purpose system," helping with desegregation. (*Id.*)[2]

Accordingly, the Court finds that Plaintiffs have not demonstrated immediate irreparable harm. Because Plaintiffs have not demonstrated this crucial factor, the Court declines to consider the others. Plaintiffs' motion for preliminary injunction is **DENIED**.

**B. Motion to Dismiss**

Also before the Court is the City's motion to dismiss the amended complaint (Doc. 29) and the parties' responsive memoranda (Docs. 30, 31).

Courts construe a motion to dismiss an amended complaint as a motion for reconsideration when the motion to dismiss restates arguments already considered and rejected with respect to the original complaint. *See e.g., Oglesby v. FedEx Ground*

---

[2] Despite this recognition, Plaintiffs argue that the framework is "nominal" and does "not go far enough to effectively desegregate the present RTA system." (Doc. 47 at 8). Plaintiffs then state that, "[u]nless modified in the next 4 months, Plaintiffs will file a second motion for preliminary injunction challenging the new ordinance." (Doc. 47 at 8, fn.2). The Court is not precluding Plaintiffs from filing such a motion, which would provide all parties a reasonable opportunity to be heard on the new ordinance. However, Plaintiffs (more specifically, their counsel) are advised that, when seeking injunctive relief, it is helpful to analyze each balancing factor with supporting case law and to provide citations (*e.g.*, "Exhibit A at p. 1") to complete versions of attached, supporting documentation. Moreover, in the event Plaintiffs again seek injunctive relief, Plaintiffs **SHALL** provide a proposed order detailing, in clear terms, the relief sought, and with careful consideration to whether the proposed order passes constitutional muster. (*See* Doc. 22 at 11-12 (noting that several of the Plaintiffs' demands are constitutionally questionable, but some appear, without any briefing to the contrary, to be constitutionally inoffensive)).

*Package Sys., Inc.*, No. 3:20-CV-346, 2022 WL 561410, at *1 (S.D. Ohio Feb. 24, 2022); *Universal Surveillance Corp. v. Checkpoint Sys.*, No. 5:11-CV-1755, 2013 WL 8336267, *3 (N.D. Ohio Sept. 28, 2013).

Though the Federal Rules of Civil Procedure do not expressly recognize a motion to reconsider, "a district court has an inherent power to amend interlocutory orders." *Al–Sadoon v. FISA Madison Financial Corp.*, 188 F. Supp. 2d 899, 902 (M.D. Tenn. 2002). Moreoever, Federal Rule of Civil Procedure 54(b) permits courts to revise any order before entry of final judgment. *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004). "Traditionally, courts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Id.*

The City acknowledges that the Amended Complaint and original complaint are, in large part, the same. (Doc. 29 at 6; *see also* Doc. 31 at 2).[3] Yet, despite this recognition, the City makes substantially the same arguments as to why the Amended Complaint should be dismissed. (*Compare* Doc. 9 *with* Doc. 29).[4] The Court has

---

[3] The Amended Complaint differs from Plaintiffs' initial complaint in the following key respects: (1) it adds named Plaintiffs from previously unrepresented class neighborhoods; (2) it removes plaintiff-specific allegations; (3) it adds new proposed class and subclass definitions; and (4) it adds updated data points for class neighborhoods, *e.g.*, census data.

[4] The City makes a few new arguments why Plaintiffs fail to allege an injury-in-fact, suggesting the Amended Complaint should be dismissed for lack of standing. (Doc. 29 at 11-14). But the City does not explain why these new arguments warrant reconsideration of the Court's prior order which found that Plaintiffs had adequately pled standing, or why the new arguments were not raised previously. Nor does the Court find that these arguments change the Court's prior analysis.

already considered, and generally rejected, those arguments. (Doc. 22). The City has provided no justification why this Court should reconsider its prior decision. Nor does the Court find a compelling justification to do so.

To be sure, the City correctly notes that the Amended Complaint "includes claims identical to those which this Court previously dismissed," *i.e.*, Plaintiffs' disparate treatment claim. (Doc. 29 at 7). But, the City could have presented this issue in two-pages, rather than wasting counsel's and the Court's resources with 79+ pages of redundant material.

Accordingly, the City's motion to dismiss is **GRANTED in part** as it relates to any of Plaintiffs' claims for intentional discrimination or disparate treatment under the Fair Housing Act. The motion is otherwise **DENIED**.

## IV. CONCLUSION

Based upon the foregoing, Plaintiffs' motion for preliminary injunction (Doc. 41) is **DENIED**. Defendant's motion to dismiss is (Doc. 29) **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

Date: 6/26/2023

Timothy S. Black
United States District Judge